UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DAVID TUTTLE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 1:15-cv-236-JAW |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

**REPORT AND RECOMMENDED DECISION**[1]

This Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the basis that the administrative law judge erred in finding that he had only a mild limitation in intellectual functioning and no limitations in the use of his hands. *See* Itemized Statement of Specific Errors ("Statement of Errors") (ECF No. 15) at 5-7. I find no error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on March 18, 2016, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

chronic obstructive pulmonary disease ("COPD") and degenerative disc disease of the cervical and lumbar spine, Finding 2, Record at 17; that he had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except that due to musculoskeletal and respiratory impairments, he might change from sitting to standing or standing to sitting for five minutes each hour, could frequently balance, kneel, or crawl, could occasionally climb, stoop, or crouch, could frequently work overhead bilaterally, needed to avoid temperature extremes, humidity, and pulmonary irritants, and needed to avoid unprotected heights and irregular terrain, Finding 4, *id*. at 20; that, considering his age (44 years old, defined as a younger individual, on July 25, 2012, the date his application was filed, education (limited), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 6-9, *id*. at 23; and that he, therefore, had not been disabled since July 25, 2012, the date his application was filed, Finding 10, *id*. at 24.  The Appeals Council declined to review the decision, *id*. at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I.  Discussion

### A.  Finding of Mild Mental Limitations

With respect to the plaintiff's mental functioning, the administrative law judge found:

> The [plaintiff's] medically determinable mental impairment of personality disorder/antisocial personality disorder, diagnosed by consulting examiner Donna Gates, Ph.D. (Dr. Gates) does not cause more than minimal limitation in [his] ability to perform basic mental work activities and is therefore nonsevere. The undersigned concurs with Dr. Gates' summary opinion that the [plaintiff] has 'no clinically significant mental health limitations' and with similar findings by State agency psychological consultants who assessed no severe mental health conditions.

Record at 18 (citations omitted). The administrative law judge found that the plaintiff had only mild limitations in activities of daily living, social functioning, and concentration, persistence, or pace, explaining, as to the latter functional area:

> Despite [the plaintiff's] testimony that he can 'barely read', does not understand what he reads and has a bad memory, the record does not bear this out. For instance, the record shows the [plaintiff] has applied for disability 9 times, and so has a demonstrated ability to complete the various documents required as part of the disability application process. In addition, Dr. Gates cited the [plaintiff] as alert, and noted no memory deficits, only offering a probable borderline intellectual function based on presentation and the [plaintiff's] limited education at a consultative examination. Function reports also show the [plaintiff] can count change, pay bills, manage a bank account and he follows written instructions well.

*Id*. at 19 (citations omitted).

The plaintiff complains that the administrative law judge assessed only a mild limitation in his intellectual functioning based on his ability to complete disability application paperwork,

3

despite Dr. Gates' assessment of probable borderline intellectual functioning and the plaintiff's testimony that he left high school in ninth grade to work in the woods and could barely read. *See* Statement of Errors at 6. He asserts that the finding that he completed disability paperwork is completely unsupported by the record, in that his initial application was taken orally by an employee of the commissioner, his function and work history reports were completed for him by a friend, and his reconsideration and hearing requests were filed by an appointed representative. *See id*. at 6-7. He asserts that the error was not harmless because the assessment of the omitted mental limitations would have ruled out the representative jobs identified by the vocational expert. *See id*. at 7.

As the commissioner rejoins, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 16) at 3, the administrative law judge never made a finding that the plaintiff had only a mild limitation in intellectual functioning. Rather, he found that the plaintiff had only a mild limitation in concentration, persistence, or pace. *See* Record at 19. This finding, in turn, was supported by substantial evidence.

The commissioner acknowledges that there is no evidence that the plaintiff himself completed his disability paperwork. *See* Opposition at 5. However, as she argues, *see id*. at 5-6 & n.3, this was a harmless error. Dr. Gates found that, although the plaintiff's intellectual functioning was estimated to be in the borderline range, based on his presentation style, *see* Record at 344, he had "no clinically significant mental health limitations[,]" *id*. at 345. With the benefit of review of the Gates report, two agency nonexamining mental health consultants, Thomas Knox, Ph.D., and Brian Stahl, Ph.D., both found that the plaintiff had only a mild limitation in concentration, persistence, or pace. *See id*. at 92-93, 106, 108. There is no expert opinion to the contrary. Moreover, as the administrative law judge pointed out, Dr. Gates found the plaintiff to

be alert and noted no memory deficits, and function reports indicated that he could count change, pay bills, manage a bank account, and follow written instructions well.  *See id*. at 19, 236, 238, 244, 246, 344.

To the extent that the plaintiff complains that a finding of intellectual limitation was omitted, the commissioner correctly notes that Dr. Gates did not *diagnose* borderline intellectual functioning.  *See* Opposition at 4; Record at 345.  The record is devoid of evidence that the plaintiff had a medically determinable intellectual impairment.  As the commissioner points out, in such circumstances, limitations on work capacity cannot be assessed as a matter of law.  *See* Opposition at 4; Social Security Ruling 96-3p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2015) ("SSR 96-3p"), at 117 ("Symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect an individual's ability to do basic work activities unless the individual first establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a medically determinable physical or mental impairment(s)[.]").

In any event, even if the plaintiff had demonstrated that the administrative law judge erred in finding that he had only mild limitations in concentration, persistence, or pace, he fails to explain what specific limitation was omitted and how its inclusion would have been outcome-determinative.  *See* Statement of Errors at 7; *Shinseki v. Sanders,* 556 U.S. 396, 409 (2009) (a claimant bears the burden to demonstrate harmful error in an agency's determination); *Courtney v. Colvin*, Civil No. 2:13-cv-72-DBH, 2014 WL 320234, at *4 (D. Me. Jan. 29, 2014) (claimant "fail[ed] to identify the specific limitations imposed by [mental impairments found not severe at

Step 2] that would have necessarily affected the outcome of her application for benefits, a basic requirement at this level of review").[2]

### B. Finding of No Hand Limitations

The administrative law judge found the plaintiff's alleged hand impairments nonsevere, explaining, "While the record indicates that the [plaintiff] underwent skin graft surgery on his hands over 20 years ago, the objective medical record fails to confirm chronic resultant limitations in handling, gripping or grasping." Record at 18. He noted that office records of Loraine Paradis, D.O., "show[ed] the [plaintiff] reported cutting and splitting wood for heat in February 2013; he was also chopping wood to earn some money in June 2013[.]" *Id*. at 21 (citation omitted); *see also id*. at 365, 378. He stated, "[W]ood chopping is an inconsistent activity for someone who alleges debilitating back pain and problems with grasping." *Id.* at 21.

With respect to relevant medical opinion evidence, the administrative law judge "accord[ed] the greatest weight to the State agency medical consultant evaluation by Karyn Diamond, M.D. at the initial [review] level, which is most consistent with the overall record." *Id.* at 22. (citation omitted). He concurred with the assessment of Dr. Diamond and a second agency nonexamining consultant, J.H. Hall, M.D., that the opinion of agency examining consultant David S. Axelman, M.D., was "an overestimate of the [plaintiff's] limitations, and based more upon a

---

[2] The plaintiff cites page 48 of the Record in support of his harmful error argument. *See* Statement of Errors at 7. The cited page reflects that a vocational expert present at the plaintiff's hearing testified that a lack of any math skills would rule out three jobs given in response to the administrative law judge's first hypothetical question because "all [of those jobs] would expect an individual to be able to make change." Record at 48. The administrative law judge relied on those three jobs (the jobs of parking lot attendant, ticket seller, and toll collector) in finding the plaintiff capable of performing work existing in substantial numbers in the national economy. *See id*. at 23, 45-46. However, Dr. Gates never indicated that any possible deficits in the plaintiff's intellectual functioning resulted in a lack of any math skills or, more specifically, an inability to count change. *See id*. at 344-45. As the administrative law judge noted, *see id*. at 19, there is evidence to the contrary. Both the plaintiff and a friend indicated in function reports that he could count change. *See id*. at 236, 244.

self-reported snapshot of the [plaintiff] . . . than objective laboratory findings." *Id*.; *see also id*. at 94 (Diamond), 109 (Hall), 347-51 (Axelman).

The plaintiff told Dr. Axelman that he had been purposefully lit on fire in 1991, suffered severe third-degree burns, was in the hospital for three months, had skin grafts, including to the dorsum of both hands, and had "significant sensitivity of the dorsum of his hands w[h]ere they swell and bleed easily." *Id*. at 347-48. In a "Review of Systems," Dr. Axelman noted that the plaintiff's "hand can lock up when he does things repetitively from the burns, but he can grip[,]" and "[h]is fine motor skills are adequate as long as it is not repetitive." *Id*. at 349. On examination, Dr. Axelman found, in relevant part:

> [The plaintiff] has multiple skin grafts of at least one half of the back, one half of the chest, covering most [of the] arms and the entire dorsum of both hands. They are almost webbed-like and thin-skinned, but no inter-finger webs. He has a flexure contracture of the DIP joint of the right fifth finger.

*Id*. at 349-50. He found no abnormality of motor strength in the plaintiff's grip. *See id*. at 350.

Dr. Axelman concluded that the plaintiff "has difficulty with repetitive use of his hands[,] although his fine motor skills and grip are adequate today in the short evaluation[,]" and "can handle objects, but not for [a] long period of time, secondary to his burns it sounds like." *Id*. at 350-51.

Dr. Diamond found the plaintiff limited in reaching overhead due to lumbar pain but assessed no limitations in his ability to handle, finger, or feel. *See id*. at 95. She explained:

> [The plaintiff] alleges [he is] unable to perform repetitive hand activities due to remote burns/grafting to dorsum of bilateral hands. Objective evidence does not support any impairment with grip/grasp, ROM [range of motion] or dexterity. There is no evidence of atrophy or weakness which would support limitations of activity.

*Id*. at 95-96. Dr. Hall assessed no manipulative limitations at all, although he did not explain their omission. *See id*. at 110-11.

7

The plaintiff argues that the administrative law judge's resolution of conflicts between the Axelman and Diamond/Hall opinions ignored "the substantial objective component" of Dr. Axelman's opinion concerning his hand limitations. Statement of Errors at 6. At oral argument, the plaintiff's counsel acknowledged that Dr. Axelman relied in part on the plaintiff's subjective allegations in the sense that, during his brief examination, he did not have the opportunity to observe the plaintiff attempting any repetitive use of his hands. However, the plaintiff's counsel argued that Dr. Axelman's limitation nonetheless was fundamentally based on objective evidence in the sense that Dr. Axelman must have deemed the plaintiff's subjective allegations consistent with his findings on examination of the plaintiff's hands.

The plaintiff adds that the administrative law judge's additional reason for discounting his hand limitations – his sporadic physical activities of cutting wood and cleaning a friend's yard – constitutes an impermissible basis, standing alone, for an RFC assessment, a proposition for which he cites *Ormon v. Astrue*, 497 Fed. Appx. 81, 87 (1st Cir. 2012), and *Poulin v. Colvin*, Civil No. 2:14-CV-102-DBH, 2015 WL 1809194 (D. Me. Apr. 21, 2015). *See id.*

He asserts that this error, as well, was not harmless because the assessment of the omitted hand limitations would have ruled out the representative jobs identified by the vocational expert. *See id.* at 7.

I find no error. As the commissioner points out, *see* Opposition at 8, Dr. Diamond considered not only the plaintiff's allegation of hand limitations but also Dr. Axelman's finding of such limitations, *see* Record at 94-96. She explained why, in her view, no objective evidence supported hand limitations. *See id.* Nothing in her assessment of the Axelman opinion makes it clear to me, as a layperson, that her expert judgment was wrong or that the administrative law judge erred as a matter of law in according it great weight.

First, Dr. Diamond seemingly did not ignore Dr. Axelman's objective findings: she described his opinion as relying "heavily[,]" not entirely, on the plaintiff's subjective allegations. *Id*. at 97. Second, with respect to the plaintiff's hands, she explained that there was no objective evidence that would support such limitations, including evidence of atrophy or weakness. *See id*. 95. Indeed, Dr. Axelman's only findings on examination were of thin, webbed skin on the dorsum of the plaintiff's hands as a result of skin grafts and of a contracture of a joint in one of his fingers. *See id*. at 349-50. Significantly, Dr. Axelman indicated that the plaintiff demonstrated adequate fine motor skills and grip during examination. *See id*. at 350. One could fairly conclude that, in finding that the plaintiff had difficulty with repetitive use of his hands and with handling for a long period of time, Dr. Axelman relied largely, if not entirely, on the plaintiff's subjective allegations. While, as the plaintiff's counsel argued, Dr. Axelman seemingly did not find the plaintiff's statements regarding his hand limitations inconsistent with anything he observed on physical examination of the plaintiff's hands, that is not a basis on which to second-guess Dr. Diamond's expert judgment that Dr. Axelman recorded no objective findings indicative of such limitations.

Nor did the administrative law judge err in characterizing the plaintiff's activities as inconsistent with his professed hand limitations. As the plaintiff acknowledges, *see* Statement of Errors at 6, *Ormon* and *Poulin* stand for the proposition that an administrative law judge cannot base an RFC determination *solely* on a claimant's activities of daily living, *see Ormon*, 497 Fed. Appx. at 87; *Poulin*, 2015 WL 1809194, at *3. That is not what happened here. The administrative law judge based his RFC finding on the medical opinion of Dr. Diamond. *See* Record at 22. In a context such as that, reliance on a plaintiff's activities of daily living as additional evidence of his or her RFC, including the credibility of his or her allegations, is not error. *See, e.g., Rucker v. Colvin*, Civil No. 2:13-CV-218-DBH, 2014 WL 1870731, at *7 (D. Me. May 8, 2014) ("[W]hile

9

a claimant's activities of daily living, standing alone, do not constitute substantial evidence of a capacity to undertake full-time remunerative employment, an administrative law judge properly may take such activities into consideration in assessing the credibility of a claimant's allegations.") (citations omitted).

In any event, even if the plaintiff had demonstrated that the administrative law judge erred in omitting to assess any hand limitations, he fails to explain what specific limitation was omitted, and how its inclusion would have been outcome-determinative. *See* Statement of Errors at 7; *Shinseki,* 556 U.S. at 409; *Courtney*, 2014 WL 320234, at *4.[3]

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

---

[3] As noted above, the plaintiff cites page 48 of the Record in support of his harmful error argument. *See* Statement of Errors at 7. The cited page reflects that the vocational expert testified that an individual who "could not do anything involving use of [his] hands for any length of time based on his impairment and the hands swelling, and essentially becoming inoperable," would not be able to perform two jobs provided in response to a second hypothetical question, the jobs of linen grader and laundry folder. Record at 48; *see also id*. at 46-47. However, the administrative law judge did not rely on those two jobs in finding the plaintiff capable of performing work existing in significant numbers in the national economy. *See id*. at 23.

Dated this 4th day of April, 2016.

                                            /s/ John H. Rich III
                                            John H. Rich III
                                            United States Magistrate Judge